The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pamela T. Young. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence, the Full Commission reverses the prior Opinion and Award and enters the following Opinion and Award.
 *************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 18 November 1996 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. ITT Hartford Insurance Company is the carrier on the risk.
4. The date of the accident was 6 July 1994.
5. An Industrial Commission Form 22 has been submitted upon which plaintiff's average weekly wage was calculated to be $251.78.
6. The parties have stipulated into the record an Industrial Commission Form 21, approved on 15 May 1995 and an Industrial Commission Form 26, approved on 2 November 1995.
7. Plaintiff received temporary total disability benefits from 15 July 1994 to 8 January 1995 and from 10 August 1995 to 5 December 1995. Plaintiff received temporary partial disability benefits from 20 March 1995 to 14 May 1995.
8. The parties have stipulated to a packet of plaintiff's medical records from Rehability Center, Gaston Memorial Hospital, Medical Park Orthopaedic Association, Dr. Raymond Sweet, Mercy Hospital, and The Miller Orthopaedic Clinic.
9. The parties have stipulated into evidence records from plaintiff's automobile accident of 11 December 1995.
 *************
Based on the evidence of record, the Full Commission finds facts as follows:
 FINDINGS OF FACT
1. At the time of the hearing on 18 November 1996, plaintiff was a 32 year old ninth grade educated male with limited reading and writing skills. His employment history includes agriculture and construction work.
2. Plaintiff worked for defendant-employer on its farm as a caretaker. His job duties included landscaping work. As of 6 July 1996, plaintiff had worked in this capacity for two years.
3. On 6 July 1996, while in the performance of his duties for defendant-employer, plaintiff injured his back while lifting a concrete birdbath.
4. The parties entered into an Industrial Commission Form 21 Agreement, which was approved on 15 May 1995. Through this Form 21, defendants admitted the compensability of plaintiff's 6 July 1996 back injury.
5. When hired by defendant-employer, plaintiff was provided a rent free mobile home to live in. The mobile home was located on the farm where plaintiff worked. Plaintiff contends that the fair rental value of this employer provided housing should have been considered and included in the calculation of his average weekly wage. The fair rental value of this employer provided housing was approximately $425.00 per month.
6. The issue of whether employer provided housing should be considered as "wages" when calculating an employee's average weekly wage is not directly addressed in the Workers' Compensation Act. However, what is considered as "wages" under the North Carolina law is addressed more specifically in other sections of our General Statutes, and it is proper for the Industrial Commission to examine these other sources in making its determination.
7. Under G.S. § 95-25.2(16) of the Wage and Hour Act, the definition of "wages" includes not only "compensation for labor or services rendered by an employee," but also "the reasonable cost . . . of furnishing employees with board, lodging, or other facilities." Further, Rule .0310(a) of the Administrative Rules of the Wage and Hour Act states that wages may include the reasonable cost of housing provided by the employer when the housing provides a "benefit to the employee and the benefit has been received by the employee." In the present case, the benefit to plaintiff from rent free housing is self evident.
8. Defendant-employer withheld the cost of utilities associated with plaintiff's housing from his paychecks. All types of wage withholdings are governed by G.S. § 95-25.8 of the Wage and Hour Act. Aside from required withholdings, an employer may withhold wages under G.S. § 95-25.8(2) when it has secured written authorization from the employee specifying the reason for the deduction. When the amount of the deduction is not calculable in advance, as is the case with plaintiff's utilities, the employee must be given the opportunity to withdraw the authorization prior to the actual deduction under G.S. § 95-25.8(2)(b). An examination of the record in this case reveals no evidence that this requirement of the Wage and Hour Act was satisfied by defendants.
9. In G.S. § 97-2(5), the Workers' Compensation Act does specify that other "allowances of any character" may be deemed part of an employee's earnings when they are made in lieu of wages and are a specified part of the employee's wage contract.
Without further explanation in this section of the Act, the accepted principles of interpretation should be applied. When reviewing the fact of a case, the Act should be liberally construed in favor of the injured worker and benefits should not be denied based upon technical or narrow interpretations. Further, ambiguous provisions of the Act should be interpreted in a worker's favor. Under these principles of interpretation, the value of the rent free housing provided to plaintiff falls within the Act's broad definition of an "allowance of any character."
The value of plaintiff's housing is monetarily quantifiable based on the surrounding rental market at the time in question. Additionally, plaintiff's mobile home was furnished with a refrigerator, stove and telephone. As such, it provided a discernible economic benefit to plaintiff. Out of his check each week, defendant-employer deducted utilities such as long distance phone charges, electricity and water as these items apparently were not included as compensation. If the value of the use of the mobile home was not part of plaintiff's overall compensation, it too would have been deducted or charged in some other way. Furthermore, providing rent free housing was an established part of working in certain positions for defendant-employer. In addition to plaintiff's mobile home, there were two other mobile homes and one modular home which were provided to employees. Therefore, based on the record of evidence, the rent free housing was provided to plaintiff in lieu of wages as part of his wage contract.
10. Having examined the facts of this case in conjunction with the provisions of the Workers' Compensation Act and the instructive provisions of the Wage and Hour Act, the Full Commission finds that value of the rent free housing provided to plaintiff should be considered and included in the calculation of his average weekly wage.
11. In the Form 22 submitted to the Commission, defendants misrepresented the fact that plaintiff had received rent free housing in lieu of wages. Based on this Form 22, plaintiff's average weekly wage was calculated to be $251.78. The fair rental value of the rent free housing was $425.00 per month. Over a twelve (12) month period this value amounts to $5,100.00, which when divided by a period of fifty-two (52) weeks yields a weekly value of $98.08. With this amount included, plaintiff's average weekly wage was $349.86 ($251.78 + $98.08), yielding a compensation rate of $233.36.
12. Following his injury on 6 July 1994, plaintiff was referred to Dr. James Sanders, an orthopaedic surgeon. Dr. Sanders ordered an MRI which revealed a herniated disc at L4-5 on the right and L5-S1 on the left. When Dr. Sanders suggested that plaintiff have a lumbar myelogram and CAT scan, plaintiff sought a second opinion.
13. Plaintiff was then referred to Dr. Raymond Sweet, a neurosurgeon. Dr. Sweet diagnosed a herniated disc at L5-S1 with left radiculopathy. On 7 October 1994, Dr. Sweet performed a hemilaminectomy and diskectomy at the L5-S1 level. However, by 30 November 1994, plaintiff was having recurrent left leg pain. Dr. Sweet then ordered another MRI which revealed a rounded 5mm alteration at posterior L5-S1, which was scar tissue resulting from the 7 October 1994 operation.
14. On 4 January 1995, Dr. Sweet released plaintiff to light duty work with no lifting over 30 pounds and no repetitive bending. Plaintiff attempted to perform this light duty work in January of 1995, but was forced to discontinue it due to increased pain and stiffness the following month.
15. On 22 February 1995, plaintiff was again examined by Dr. Sweet. Plaintiff reported increased pain down the left leg and an MRI on 1 March 1995 revealed a recurrent disc with some fibrosis and stenosis at L5-SI. Dr. Sweet recommended a laminectomy.
16. At that time, plaintiff was reluctant to have a second surgery given the pain he had experienced since the first surgery. With plaintiff having reasonably refused this second procedure, Dr. Sweet released him to return to work on 2 March 1995 limiting him to no lifting over 15 pounds, no repetitive bending and no prolonged sitting.
17. The carrier then referred plaintiff to Dr. Mark Hartman on 15 March 1995 and he recommended a more conservative course of treatment. A nerve block was performed but was only temporarily effective and the pain returned. On 13 April 1995, Dr. Hartman recommended that plaintiff increase his light work one hour every two weeks. Plaintiff followed this recommendation and again attempted a return to work, but could not continue to work due to his pain.
18. On 10 August 1995 plaintiff was terminated by defendant-employer who no longer had light duty work available. Plaintiff's termination and his inability to return to his former position were the result of his condition following his 6 July 1996 injury by accident.
19. On 24 August 1995, Dr. Hartman suggested surgery for the recurrent herniated disc at L5-S1, which plaintiff again declined. Dr. Hartman again released plaintiff on 4 December 1995 finding that he could lift 75 pounds occasionally, 35 pounds frequently, 15 pounds constantly and push or pull 40 pounds and carry 60 pounds.
20. Plaintiff then sought and obtained a job as a back hoe operator with a paving company. This position was compatible to the restrictions imposed by Dr. Hartman. On 11 December 1995, after working three days for the paving company, plaintiff was involved in an automobile accident. As a result, plaintiff sustained an exacerbation of his back problems and was unable to continue working for the paving company.
21. Plaintiff next found employment working for his brother-in-law who operated a plumbing company. He worked in this capacity from 1 February 1996 to 31 March 1996 earning $300.00 a week. This job was provided by his brother-in-law due to their relationship and was not available in the open job market place, since plaintiff was not a licensed plumber and his work consisted of performing unskilled labor type duties.
22. Plaintiff then obtained temporary work with U-haul in Charlotte as a hitch mechanic on 1 April 1996. Plaintiff worked in this capacity for approximately four weeks earning $8.45 an hour for 40 hours a week. From on or about 1 May 1996, plaintiff has not worked in any capacity.
23. On 12 June 1996, plaintiff returned to Dr. Hartman who opined that the automobile accident did not cause any new injuries but had exacerbated those resulting from the incident on 6 July 1994. This exacerbation of plaintiff's back condition was temporary and had resolved by 12 June 1996. On this date, the symptoms plaintiff's presented were consistent with his symptoms prior to the automobile accident and his condition was the result of his 6 July 1994 injury by accident.
24. A CT scan performed at this time showed a recurrent herniated disc at L5-S1 and a right sided herniated disc at L4-5. These areas of recurrent disc problems were the same as seen by Dr. Sweet in 1995 and were the result of plaintiff's original injury on 6 July 1994. On 19 July 1996, Dr. Hartman again performed surgery which consisted of a discectomy at L5-S1 and a decompression at L4-Sl.
25. Through the Form 21 Agreement for Compensation, which was approved on 5 May 1995, plaintiff was paid temporary total disability compensation at the rate of $167.86 per week from 15 July 1994 through 8 January 1995. Through the Industrial Commission Form 26, which was approved on 2 November 1995, plaintiff was paid temporary total disability compensation at the rate of $167.86 per week from 10 August 1995 through 5 December 1995. Based on an average weekly wage of $349.86, the compensation rate for these periods should have been $233.36, which is $65.50 per week more than what plaintiff received.
26. Plaintiff was also paid temporary partial disability compensation from 20 March 1995 through 14 May 1995. The benefits paid to plaintiff for this period were based on a average weekly wage calculated to be $251.78. However, on 6 July 1994 plaintiff's average weekly wage was $349.86 and this amount should have been used in calculating the amount of benefits to which plaintiff was entitled for this period.
27. Plaintiff continues to experience debilitating pain in his back and his current physical condition is the natural and probable result of his 6 July 1994 injury by accident. Since 10 August 1995, defendants have not offered plaintiff suitable employment and have not provided vocational rehabilitation. Nonetheless, plaintiff has made a reasonable effort to find employment and worked periodically from 6 December 1995 to on or about 1 May 1996.
29. As the result of his injury by accident, plaintiff was capable of earning varying amounts of reduced wages in several jobs from 6 December 1995 to on or about 1 May 1996. The exact dates which plaintiff worked during this period and the exact wages he was able to earn are not determinable based on evidence of record.
30. As the result of his injury by accident, plaintiff has been unable to earn wages in his former position with defendant-employer or in any other employment from 6 July 1994 through 14 July 1994 and from 1 May 1996 through the present and continuing.
 *************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The rent free housing provided to plaintiff was an allowance made in lieu of wages and was part of his wage contract. G.S. § 97-2(5). In the Form 22 upon which plaintiff's average weekly wage was based in the approved Form 21 and Form 26, defendants misrepresented the fact that plaintiff had received rent free housing in lieu of wages. As such, the value of this housing should have been considered and included in the calculation of plaintiff's average weekly wage. Id.
2. Including the value of plaintiff's rent free housing, on 6 July 1994 his average weekly wage was $349.86, yielding a compensation rate of $233.36. G.S. § 97-2(5).
3. The Industrial Commission Form 21 Agreement for Compensation, which was approved on 15 May 1995, created a presumption of continued disability in plaintiff's favor which defendants have failed to rebut. G.S. § 97-2(6); Kisiah v. W.R.Kisiah Plumbing Inc., 124 N.C. App. 72, 476 S.E.2d 434 (1996).
4. Based on the proper calculation of his average weekly wage and compensation rate, plaintiff is entitled to be paid by defendants an additional $65.50 per week for the periods he was paid temporary total disability compensation from 15 July 1994 through 8 January 1995 and from 10 August 1995 through 5 December 1995. G.S. § 97-2(5); G.S. § 97-29.
5. Based on the proper calculation of his average weekly wage and compensation rate, plaintiff is entitled to be paid by defendants additional temporary partial disability for the period of 20 March 1995 through 14 May 1995. G.S. § 97-2(5); G.S. §97-30.
6. As the result of his 6 July 1996 injury by accident, plaintiff is entitled to be paid by defendants temporary partial disability compensation at the rate of two-thirds the difference between his average weekly wage at the time of his injury of $349.86 and the varying amounts of wages he was able to earn from 6 December 1995 to 1 May 1996. G.S. § 97-30.
7. As the result of his 6 July 1994 injury by accident, plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $233.36 per week from 6 July 1994 to 14 July 1994 and from 1 May 1996 through the present and continuing until plaintiff returns to work or until further order from the Commission. G.S. § 97-29.
8. As the result of his injury by accident on 6 July 1994, plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred. G.S. § 97-25.
 *************
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff additional amounts of temporary total disability compensation at the rate of $65.50 per week for the periods of 15 July 1994 through 8 January 1995 and from 10 August 1995 through 5 December 1995. Having accrued, this amount shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
2. Defendants shall pay plaintiff additional amounts of temporary partial disability based on an average weekly wage at the time of his injury of $349.86 for the period of 20 March 1995 through 14 May 1995. Having accrued, this amount shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
3. Defendants shall pay to plaintiff temporary partial disability compensation at the rate of two-thirds the difference between his average weekly wage at the time of his injury of $349.86 and the varying amounts of wages he was able to earn from 6 December 1995 to 1 May 1996. Having accrued, this amount shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
4. Defendants shall pay to plaintiff defendants temporary total disability compensation at the rate of $233.36 per week from 6 July 1994 to 14 July 1994 and from 1 May 1996 through the present and continuing until plaintiff returns to work or until further order from the Commission. The amounts which have accrued shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
5. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as the result of his injury by accident.
6. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded above is approved for counsel for plaintiff. From the amounts having accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff with counsel for plaintiff receiving every fourth check thereafter.
7. Defendants shall pay the costs, including an expert witness fee to Dr. Mark Hartman of $180.00.
 S/ ________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
S/ ______________________ RENÉE C. RIGGSBEE COMMISSIONER